

FILED MAILROOM
1 6 2015
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNTED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

DAVID A. STEBBINS                                      PLAINTIFF

VS          CASE NO. **1:14-cv-01267-CMH-TCB**

RONALD CARTER AND
JOSHUA DEVINE                                          DEFENDANTS

### PLAINTIFF'S RESPONSE TO [035] AND [036] MOTIONS TO DISMISS

Comes now, *pro se* Plaintiff David A. Stebbins, who hereby submits the following Response to the Defendant's two Motions to Dismiss.

### FACTUAL BACKGROUND

1. Before we begin, it is important for the Court to understand that, if there is any dispute as to the underlying facts, that is grounds to deny the Motion to Dismiss for qualified immunity. "In instances where there is a material dispute over what the defendant did, and under the plaintiff's version of the events the defendant would have, but under the defendant's version he would not have, violated clearly established law, it may be that the qualified immunity question cannot be resolved without discovery." See DiMeglio v. Haines, 45 F. 3d 790, 795 (4thCir. 1995).

2. On September 25, 2014, the Plaintiff contacted the Marshal Service for the Eastern District of Virginia, to check on the status of a then-pending service of process in a civil action unrelated to this one. Plaintiff began to air his grievance after he was transferred to what, to the best of his knowledge, he believed at the time to be the appropriate department. However, as it turned out, the person at the front desk made a mistake, and instead of transferring Plaintiff to the Civil Process Service Division, he was instead transferred to the Cellblock.

3. Agent Devine answered the call, and, out of frustration, proceeded to yell at Plaintiff for wasting his time, as if this was the Plaintiff's fault for being transferred to the wrong department.

Plaintiff emphatically denies that the telephone conversation was "mutually heated;" rather, Plaintiff maintains that it was Devine who made it heated when he decided to act unprofessional and immature.

4.  Plaintiff attempted to inform Devine that, if he was transferred to the wrong department, it was the command center's fault. Devine, who was apparently just having a bad morning and wanted to take out his aggression on someone, issued a threat to Plaintiff, saying "You yell at me over the phone, and I, personally, will seek out and file a charge for you and make you a member of the cell block. Are we clear?"

5.  Plaintiff had dealt with corrupt government officials numerous times in the past, and has read about numerous stories where exonerated of the most heinous crimes, despite overwhelming evidence. One example of a news story Plaintiff heard about where this happened can be viewed at the following Youtube video:

> `https://www.youtube.com/watch?v=PnIGY9fOwzI`

6.  In light of these life experiences, the message that Plaintiff *received* from Agent Devine was thus:

> "I am a government agent. This means that the government will ALWAYS trust my word over yours, no matter what the evidence says. Therefore, I have free reign to bully you to my heart's content, and I will never be punished for it because I am a government agent. Thus, if you do not show me the proper respect that I deserve, I will fabricate charges against you in order to FORCE you to respect me! I don't care if what you're doing isn't illegal; if I don't like you, I'll *find a way* to lock you up. Do you understand me, bitch?!"

7.  Agent Carter's refusal to issue any kind of sanctions to the Plaintiff only confirmed this belief. Whereas the Defense argues that any reasonable person would, upon hearing Agent Carter's promise to "talk to" Agent Devine as an assurance that he would not be arrested, in light of Plaintiff's life experiences, he received the exact opposite message. When Agent Carter said

that he would "talk to" Devine, the message that Plaintiff received, in light of his life experiences, was the following:

> "I will politely remind Devine that what he threatened to do was illegal. However, if he already knows that it is illegal, and simply doesn't care, then I will not e anything to actually *deter* Devine from carrying out his threats. Why not? Because he is a government agent, and we do not punish our own brethren. Deal with it, punk."

8. It was only then when Plaintiff filed suit. Devine is not being sued for making a bad judgment call, as the Defense suggests. Rather, he is being sued for breaking the law like a common thug, without even the pretense of legal authority, and then, because he just happens to work for the government for a living, he doesn't go to prison for it.

9. Plaintiff makes a lot of references to his "personal life experiences" in this Answer. The Defendant's initial, knee-jerk reaction to this is most likely going to be "We were not aware of these life experiences." That, however, is a legally insufficient defense, as a matter of law, by reason of the common law doctrine of the "eggshell skull rule."

10. Also, it is important to understand that this is not an FTCA claim; it is a Bivens Action. As a result, there is no obligation make any administrative claims.

## ARGUMENT

### I. Standard of Review

11. When reviewing a Motion to Dismiss for failure to state a claim, the Court must assume all facts contained in the Complaint as true, and view them in the light most favorable to the Plaintiff.

12. This means that the Court must accept, for purposes of summary dismissal, all of the clarified factual allegations contained in ¶¶ 1-8 of this Response. It is upon those actions – not the good faith actions the Defense asserts – which the Court must base its summary dismissal.

13. Also, the Defendants maintain that the purpose behind qualified immunity is to protect government officials in the performance of their duties. That purpose is not being served by issuing qualified immunity to the Defendants in this case. Why? Because as Plaintiff pointed out in his original Complaint, the performance of the Defendant's duties were not impaired by Plaintiff's alleged disrespect in the current case; to the contrary, any and all interference with the performance of the Defendant's duties were caused by the phone call itself, not the allegedly snide remarks Plaintiff made during said phone call. Any and all interference with the performance of official duty could have been eliminated quickly and easily by Devine simply hanging up the phone, and no reasonable person would come to any other conclusion.

14. As a result, this Court would be perfectly in compliance with the spirit of the law if it did not apply qualified immunity in this case. This is not about the performance of official duties; this is about a person breaking the law like a common thug, and then using his position as a government agent as an excuse to be above the law.

## II. Deputy Marshals Devine And Carter are NOT Entitled To Qualified Immunity

### A. Standard for qualified immunity

15. "To determine whether [the Defense] is entitled to qualified immunity, we must (1) identify the right allegedly violated, (2) consider whether at the time of the alleged violation the right was clearly established, and (3) determine whether a reasonable person in [the Defense]'s position would have known that his actions would violate that right." See *Love-Lane v. Martin*, 355 F. 3d 766, 783 (4th Cir. 2004).

16. Based on those three essential elements, it is clear that, to be held liable, it is not necessary that the illegality of the Defendant's specific acts or omissions be clearly established. All that need be clearly established is the plaintiff's legal right itself (which is a question of law).

At that point, as long as a reasonable person would know that his or her acts or omissions – whatever they may be – would violate that right (which is a question of *fact*, not a question of law), then they lose their qualified immunity.

17. Let's put this in terms this Court can probably relate to. In Baltimore, the city police have recently come under political fire for their apparent use of "rough rides" when transporting detainees to jail. Plaintiffs suing the Baltimore Police Department (either individually, or collectively as a single, class-action lawsuit), to escape qualified immunity, need not show that there was a clearly-established ban on rough rides. Instead, they need only point to the axiomatic constitutional ban on extra-judicial punishment, and then show that a reasonable person would consider the rough rides to constitute "extra-judicial punishment" as a matter of fact. Do that, and qualified immunity is effectively pierced.

    **B. Due Process Violation for threats of arrest for what is not illegal**

18. Let's make something clear before we continue, something that Plaintiff intended to communicate in his original complaint, but perhaps failed to do so. Plaintiff's Bivens action is proceeding on TWO separate legal theories. First, the Defendant's actions violated Plaintiff's clearly-established due process rights, and second, that the Defendant's actions violated Plaintiff's clearly-established free speech rights. This is an important inquiry, because the first essential element of qualified immunity is to identity the right allegedly violated.

19. Plaintiff references his "due process" arguments in ¶ 30 and ¶ 32(b) of his Complaint, but he now concedes that he perhaps could have made his position a little clearer.

20. Joshua Devine's threats were illegal, so long as Plaintiff had not committed any crime. When Devine threatened to have Plaintiff arrested (whether or not he intended to personally arrest Plaintiff himself), his threat can only reasonably be construed in one of two ways:

(a) Either he was threatening to charge Plaintiff with the crime of "badgering a federal agent," something which is NOT a crime at all, or ...

(b) ... he was going to make up evidence of a falsified accusation, in order to create the ILLUSION that Plaintiff had committed a crime that actually was illegal (much like the youtube video Plaintiff showed you of the Seattle cop who threatened to make up evidence of robbery).

21. If he was threatening the latter, then his threatened actions violated the clearly-established law that prohibits lying in a police report.

22. If, however, Devine was threatening the former, then his threatened actions would violate the clearly-established law that you can only be arrested for something that is actually a crime, and cops cannot create crimes that do not exist previously.

23. Only an Act of Congress can make something a crime that was not a crime previously. On extremely rare occasions, the judiciary can create a law where the absence of said law would be constitutional. Two examples which come to mind int hat circumstance are *Ex Parte Young*, 209 US 123 (1908) (creating the stripping doctrine) and *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 US 388 (1971) (creating the "Bivens Action").

24. However, there are three substantial differences between those cases and the current one:

(a) The judicial creation of existing law has, historically, been limited only to instances where it would be genuinely unconstitutional to not have this law, not simply when a citizen is doing something the court personally doesn't like.

(b) The rare use of this authority has, historically, been limited exclusively to the creation of *civil* causes of action, not crimes for which there exists a possibility of incarceration.

(c) Only the judiciary has been allowed to create law in place of Congress. Whatever the

judiciary's limits are in this manner, one thing is certain: Random Joe Cop has no authority, under any circumstances whatsoever, to create a new law.

25. Therefore, if Devine was threatening to charge Plaintiff with something that is not a crime, his threatened actions would amount to nothing less than "usurpation of Congressional authority."

26. Here are the legal authorities Plaintiff has to support legal argument:

(a) Article 1, Sentence 1 of the U.S. Constitution states "All legislative powers" (as in ... 100% of them) "shall be vested in a Congress, which shall consist of a Senate and a House of Representatives."

(b) The First Amendment begins with the phrase "The Congress shall pass no law," and then listing the five First Amendment rights. This begs the question: Why just Congress? Why not the entire federal government? The answer is simple: The Founding Fathers took for granted the notion that the executive and judicial branches had authority to act at all, for better or worse, except as provided by statute.

(c) Speaking of which, this is embedded in the very *essence* of the Constitution. This is, at its core, what America is supposed to stand for: The laws we must follow are passed by a body of representatives who we elect. See, that is called "democracy," and it is the whole reason our Founding Fathers broke away from the British Empire in the first place.

(d) The Fifth Amendment states that "no person shall be denied life, liberty, or property, without due process of law." This phrase has been interpreted as meaning the same thing as "the law of the land." See *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 US 272 (1855). The plain text of that phrase makes it perfectly clear that something must actually be illegal first before a citizen can be punished for it.

27. Here's a hypothetical example that can help the Court understand the situation: In Plaintiff's state – Arkansas – there is a state law banning public nudity. See Arkansas Code § 5-14-112. However, there is, currently, no law in Arkansas prohibiting urinating on the sidewalk, as long as you do not unzip your fly to do so (e.g. if you split your legs while wearing a skirt without panties, and urinate that way). This means that a cop has no authority to arrest – or even threaten to arrest – a suspect who does that. He can argue until the cows come home how urinating on the sidewalk is disgusting, morally reprehensible, unsanitary, etc. Those would all be good arguments for *making that act illegal*, but unless and until that law gets passed, the cop can take his desire to deter that conduct and shove it up his arse.

28. Judging from this clearly-established law (that an act must actually *be illegal* first before a citizen can be punished for it), we can safely conclude that Devine's actions were patently unconstitutional, and no reasonable person in Devine's position (key word: reasonable) could possibly have though "this citizen's conduct is unlawful." A reasonable person in Devine's position would have no choice but to conclude that he would need to make something up – either a new law, or evidence to support a false crime – in order to effect his threats.

29. The Defense wants to claim qualified immunity? Here's what you need to do: Produce a statute – duly passed by a majority of both houses of Congress, and either signed by the President, or his veto overwritten by two-thirds of both houses of Congress, consistently with Article V of the U.S. Constitution – that even arguably prohibits the conduct that Plaintiff engaged in, and then, and ONLY THEN, should the Court be properly confronted with the question "Is this law unconstitutional?" But unless and until the Defense can produce such a statute, then the Defendant's threats are automatically unconstitutional, if not under the First Amendment, then under the Fifth. Also, the Defense should lose qualified immunity, for failure

to find any statute which his charges would even arguably fall under, thus losing the defense that the law was not clearly established.

### i.     Cautionary instruction to ease the Court's conscience.

30.    It is important for this Court to understand that the aforementioned legal argument is only applicable in a Bivens Action. It would not be applicable in a Section 1983 claim.

31.    The reason for this is because federal courts cannot adjudicate whether an officer's actions were in violation of *state* law; only the state courts can do that. Therefore, whenever a Section 1983 claim is being filed, the federal courts assume that the Defendant's actions were state-sanctioned, and then they decide whether a state law sanctioning this conduct would be unconstitutional.

32.    However, when it is a *federal* agent, acting within the course and scope of his *federal* employment, then the *federal* courts absolutely do have jurisdiction to adjudicate whether his actions violate *federal* law. Because ... where else are you supposed to go to resolve such a dispute?

33.    So, if this Court is worried that accepting this legal argument would open the floodgates to unprecedented federal interference with state sovereignty, don't be. We are still staying entirely within the Court's clearly-established jurisdictional boundaries.

### C.    Agent Devine's Threats of Arrest were Serious, Plausible, and Reasonable

34.    To entitle Agent Devine to qualified immunity, they argue that Agent Devine's threats of arrest were not reasonable because the Plaintiff was more than 1,100 miles away from Devine.

35.    This means absolutely nothing. First of all, to be entitled to qualified immunity, the circumstances must be reasonably vague such that a reasonable person *in the Defendant's position* would know that his conduct violated the (clearly-established) law. That means that we

should consider only those facts which were available to the Defendant at the time. Since nothing in the recorded phone call suggests that the Defendant knew about the distance issue before he made the threats, then we cannot use that in determining what a "reasonable person" would believe. In the current case, the Defendant's qualified immunity is based on whether he should have known that a threat to a fellow Alexandria resident would have chilled that Alexandria resident's speech, since, for all he knew at the time, that is what Plaintiff was.

36. Second, distance is no object whatsoever when determining whether it is plausible to arrest a person, and do you know why? Because the federal courts recognize a legal process known as "extradition."

37. Here are just a few examples of people being extradited across much, much greater distances than Plaintiff would have to travel:

- Exhibit A - a news story concerning the extradition of a Los Angelas resident to New York City, a distance of more than 3,000 miles)

- Valentine v. United States ex rel. Neidecker, 299 US 5 (1936) (a case concerning the extradition of a U.S. citizen to France)

- Charlton v. Kelly, 229 US 447 (1913) (a case concerning the extradition of a U.S. citizen to Italy)

38. So, let's say that, on September 25, 2014, at around 10:00AM, Agent Devine threatened to arrest the Plaintiff. At around 2:30PM of that same day, he looks up the case on Pacer that Plaintiff was calling to complain about, and realizes that Plaintiff is in Arkansas. So, he files a complaint with U.S. Attorney Dana Boente, stating that Plaintiff advised him that he had a bomb planted somewhere in Alexandria, and that a large portion of the city would go up in smoke if Plaintiff did not win his existing case (this would, of course, be entirely made up, but remember:

That is what he was most likely threatening to do), and recommends that Plaintiff be charged with an act of domestic terrorism, pursuant to 18 USC § 2331(5), even if the bomb is very unlikely to have actually existed.

39.     Boente agrees to file the charges and, at 4:15PM, sends either a fax or an email to P.K. Holmes in his official capacity as Chief Judge of the United States District Court for the Western District of Arkansas, asking for Plaintiff to be extradited to the Eastern District of Virginia. Due to the time zone difference, Holmes would have left the office by that point, but he sees it at 8:00AM to the next morning (or 7:00AM on September 26, 2014), and, at 8:30AM on that day, he organizes a team of FBI agents to travel to the city of Harrison and apprehend Plaintiff. After a 3-hour drive (at 11:30AM), they arrive, handcuff Plaintiff, and place him in the back of their police cars.

40.     It is at THAT point that Plaintiff can be legally considered "incarcerated." Though it may take weeks – perhaps even months – for Plaintiff's extradition case to work its way through the Arkansas federal court system and for Plaintiff to actually be removed to Virginia, but that is not relevant for determining the "imminence" of Plaintiff's arrest.

41.     Thus, as the Court can clearly see from the above-styled example, Agent Devine absolutely had the means to carry out his threat, notwithstanding the distance (thus qualifying it as "realistic"), and the arrest would have been effected in less than a week (thus qualifying it as "imminent").

42.     As a result, Agent Devine is not entitled to qualified immunity.

### III.    Agent Carter's Refusal to Sanction Agent Devine amounts to tacit authorization

43.     Despite the Defendant's arguments, it is, indeed, clearly established law that a law enforcement officer has "an affirmative duty to intervene to protect the constitutional rights of

citizens from infringement by other law enforcement officers." See Randall v. Prince George's County, Md., 302 F. 3d 188, 203 (4th Cir. 2002). "[S]uch a duty attaches when an officer observes or has reason to know that a constitutional violation is being committed by other officers and possesses a realistic opportunity to intervene to prevent the harm from occurring. This standard recognizes that, in certain limited situations, bystanding officers are obliged to act. [I]t is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. Any rule to the contrary would permit officers to ignore their duty to enforce the law. Therefore, an officer may be liable ... on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." See *id* at 203-204.

44. Here, Agent Carter expressly disavowed any intention of "acting." The promised "talk" would have reminded Devine that what he was threatening was illegal (assuming he needed to be reminded in the first place), but would have done nothing to actually *stop* Devine from carrying out his threat. Besides, if Devine had went ahead and filed the complaint with the U.S. Attorney's Office, Agent Carter probably would have just believed Devine anyway, because that's how government agents operate: They always take the word of their law enforcement breathren over the word of citizens. Literally one hundred percent of the time.

**V.    Jurisdictional issue has been waived by United States due to its free and voluntary appearance as a Defendant in this Action.**

45. Last but not least, the Defendants seek dismissal of the United States as a Defendant, on the grounds of sovereign immunity.

46. Plaintiff is left scratching his head at this. This Complaint was originally a Bivens Action against "two unknown named federal agents." The United States was never intended to be a Defendant in this lawsuit.

47. However, now that the United States has, freely and of its own initiative, appeared as a Defendant in this action, she cannot still claim immunity. It was the United States' decision to appear as a Defendant on behalf of her employees; she made her bed, and now she has to lie in it.

48. The United States filed an appearance as a Defendant, simply so she could turn around and ask for dismissal. So ... what was the point of her appearing in the first place? She could have simply stayed out of the case, let the U.S. Attorney's Office defend her officers on the merits of the Bivens action, and we would not have to waste time with a prayer for redundant dismissal. It's like if somebody showed up another's house ... JUST so he could ask the homeowner for permission to leave!

49. So, if the United States wants to be a Defendant, that's her right, but she should not be allowed to request dismissal on grounds of immunity, when the only reason she's a part of this case in the first place is through her own, free and voluntary actions.

## CONCLUSION

50. In conclusion, there is not one single solitary portion of the Defendant's argument that is not patently without merit. They are trying to create qualified immunity in a situation where a reasonable person would know that his actions violated the law, First Amendment or otherwise (because everyone comes out of their mother's womb knowing that you cannot go to jail for something that isn't illegal). The Defense is alleging that there is no such thing as extradition, they are frivolously denying the abundance of case law that says that an officer has a duty to intervene, and most bizzare of all, the United States has chosen to become a Defendant in this

action ... and now she seeks dismissal on grounds of sovereign immunity. The United States has made her bed, and she should have to lie in it.

51.    Wherefore, premises considered, Plaintiff respectfully prays that the two Motions to Dismiss be denied. So requested on this, the 12th day of June, 2015.

/s/ David Stebbins
David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com