FILED
MAILROOM

JUL 1 0 2015

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

**UNTED STATES DISTRICT COURT FOR THE
ΞASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

**DAVID A. STEBBINS**                                          **PLAINTIFF**

**VS**                          **CASE NO. 1:14-cv-01267-CMH-TCB**

**RONALD CARTER AND
JOSHUA DEVINE**                                          **DEFENDANTS**

## ANSWER TO [045] & [046] MOTIONS TO DISMISS

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Answer to
the Defendants' Substituted Motion to Dismiss.

### Section 1: Preliminary Matters

1.      Before we begin, Plaintiff wants to make something perfectly clear:  He is NOT
abandoning his original claims!  He incorporated them, by reference, in ¶ 1 of his Amended
Complaint, and therefore, the precedent of *Young v. City of Mount Rainer* is not applicable in this
action.  The Defendant appears to understand this, since he is still arguing against the original
claims, but just in case the Court doesn't, Plaintiff is making this clear, here.

2.      Next, Plaintiff incorporates, by reference, all factual allegations and legal conclusions
contained in his Answer to the Defendant's Initial Motion to Dismiss.

### Section 2: Factual Disputes

3.      Plaintiff disputes that he "seeks leave to abuse" anyone. To the contrary, Plaintiff was
being calm and professional about the whole thing (and has eyewitness accounts to support this
opinion, who also listened to the recorded phone call and gave their input; they will be called as
witnesses in this action), but the Defendant, who apparently had something crawl up his butt
earlier that morning, decided to be a bully.

4.      Plaintiff admits that there are "more than 1100 physical miles" between Plaintiff and the

Defendants. However, he denies that this presents any sort of bar to arrest, for the reasons set forth in ¶¶ 36-41 in his Response to the Initial Motion to Dismiss.

5.      Plaintiff denies that the threat of incarceration fails to meet the threshold of "realistic, imminent threat of arrest," for all the reasons stated in ¶¶ 36-41 of his Response to the Initial Motion to Dismiss.

6.      Plaintiff denies that he is an abusive lawsuit-filer, but even if the Defense could prove that, that is not relevant to this case.  See Fed.R.Evid. 404(b).  See also the persuasive prece-dent of *Williams v. Warren*, 745 SE 2d 809, 812 (2013), from the State of Georgia ("The fact that a plaintiff is litigious, that he sues everyone who offends him or has any disagreement with him, should not affect his right to recover what is rightly his").

7.      Plaintiff denies that the Defendants, when referencing Plaintiff's litigation history, merely provided a "citation."  To the contrary, Plaintiff asserts that the Defendants were bringing this to the Court's attention in the hopes of stirring up resentment against Plaintiff for his alleged "abusive filings," at which point, Plaintiff refers the Court to sub-paragraph (d).

## Section 3: The Deficient Phone Call Recording

8.      Plaintiff concedes that his youtube upload, which Plaintiff hoped would catch Devine in the act, in fact ended before Plaintiff even began his conversation with Devine.  Plaintiff apologizes for this deficiency, and has cleared it up. The ENTIRE recorded phone call can be listened to at the following web link:

    https://www.youtube.com/watch?v=ttbFl-mv0Qs

9.      Plaintiff has a perfectly valid explanation for why the initial youtube video was incomplete.  Take a look at the following Youtube video:

    https://www.youtube.com/watch?v=VRKbuJRugVo

10.     Plaintiff needed to make it into a video, rather than an audio file, or else Youtube would not accept and process the upload.  So, Plaintiff chose to just give a giant black square as the "image."  From Windows Explorer, Plaintiff can hover his mouse over the audio file, and a gray square comes up saying, among other things, "Length: 00:02:53" (though you may have to switch to full screen and switch to the highest available resolution to see this, but it's still there).  However, when Plaintiff actually moves that audio file to Windows Movie Maker so he can add the black square on top of it, Windows Movie Maker, for WHATEVER reason, decided to trim it down to 1:32.  Plaintiff has no idea why this happened.  Of course, back in September, when Plaintiff was making that video for the first time, Plaintiff never thought to proofread his video, because all Plaintiff was doing was adding a black background so Youtube would take it; he wasn't *changing* anything, so why would Plaintiff have any reason to suspect that things might get changed without Plaintiff making the changes?

11.     Anyway, the Court and Defense now have access to the ENTIRE recorded phone call (and this time, Plaintiff made SURE that everything that was recorded was part of the new Youtube upload), so the problem has been rectified.

### Section 4: The Facts

12.     As the Court can clearly see from the new-and-improved Youtube video showing the recorded phone call, Plaintiff began to air his grievance regarding the service of process in a calm, professional manner.   When the agent appeared to blame Plaintiff, and suggest that it was Plaintiff's fault, that he "called" the cellblock, Plaintiff, admittedly, got a little offended at the accusation that he would have made such a mistake on purpose.  He raised his voice by about 0.000000000000000001 decibels, and tried to explain that it was not his fault that he got transferred to the wrong department.

13.     The man who we now know to be Agent Devine then proceeded to smugly declare that he would have Plaintiff arrested on some made-up charge if Plaintiff did not show him the respect that he, personally, felt he deserved.

### Section 5: Clearly-established constitutional rights being violated.

14.     Plaintiff is not legally required to be nice to anyone.  It is his First Amendment right to be unsociable, unaffable, unamiable, and unpleasant, if he wants to.  It is his First Amendment right to be the stereotypical "grouchy old man," as long as he's not hurting anybody.  Even if that is NOT his First Amendment right, Congress has yet to make it illegal, and therefore, a random cop STILL has no business arresting any citizen, or submitting a complaint and recommending charges to the U.S. Attorney, for said conduct.

15.     It is NOT, however, the First Amendment right (or any constitutional right, for that matter, or even statutory right) of Agent Devine to make threats of arrest for conduct he knows, full well, to not be illegal, simply because he, personally, thinks it should be illegal.

16.     Plaintiff would like to respectfully remind the Court that he is proceeding on two separate, independent legal theories.  See ¶¶ 18-33 of Plaintiff's Response to the Initial Motion to Dismiss.  Even if the First Amendment protection of Plaintiff's speech is not clearly established, the fact that (A) Plaintiff's speech has not yet been made illegal, and (B) the Fifth Amendment's right to due process of law prohibits governmental adverse action on the basis of things that aren't illegal, both are clearly established.  Thus, even if Agent Devine (and, by proxy, Agent Carter) may be entitled to qualified immunity on the issue of First Amendment Retaliation (which they are not), they are not entitled to qualified immunity for a Due Process violation.  See

17.     Plaintiff has the First Amendment right to speak out, critically, about how inefficient the U.S. Marshal Service is, no matter how "offensive" he is being while making the speech.  See

Snyder v. Phelps, 131 S. Ct. 1207 (2011) (upholding the Westboro Baptist Church's First Amendment right to harass military funerals, and that offensiveness is not a factor in determining First Amendment protection). Granted, it still has to be about an issue of public concern (see *id* at 1215, "Whether the First Amendment prohibits holding Westboro liable for its speech in this case turns largely on whether that speech is of public or private concern ... Not all speech is of equal First Amendment importance, ... and where matters of purely private significance are at issue, First Amendment protections are often less rigorous"). However, since Plaintiff was speaking out in frustration over the efficiency (or lack thereof) of a government agency in performing its duties, that qualifies as an issue of "public concern," and it is clearly-established that being "rude" or "offensive" is not an exception to otherwise valid First Amendment protection.

18.     Another case that reiterates that "offensiveness" does not negate First Amendment protection is the case of Texas v. Johnson, 491 US 397 (1989), holding that burning the U.S. Flag – a *symbol* of whatever the U.S. Governments happens to "stand for" at any one particular point in time – was First Amendment protected, even though it was clear that the Johnson was burning that flag specifically with the intent to incite people's emotions.

19.     See also Brown v. Entertainment Merchants Association, 564 U.S. 08-1448 (2011), a Supreme Court case that held that a video game can have as much off-the-rail, deliberately-offensive violence as it wants, and the government cannot regulate its sale unless and until they show a direct, scientifically-provable[1] causal link between violent entertainment and violent behavior. This precedent is consistent with Plaintiff's argument that somebody must *get hurt*, or be in realistic fear of harm, before Free Speech can be curbed.

---

1   And remember: to be SCIENTIFICALLY provable, it must be REPEATABLE! If you can't repeat it, it's not science. So, a handful of isolated cases where violent criminals, caught red-handed and in desperate need of some type of legal defense, try to use the violence in their video games as an excuse for their behavior, isn't going to make the cut.

20.     Plaintiff could go on for hours, providing citation after citation, but hopefully the Court gets the point. Plaintiff simply does not lose his First Amendment rights on grounds of his offensive speech, and that is all there is to it. That's as simple as it gets; that's as complex as it gets.

### Section 6: The Rehabilitation Act covers more than just employment

21.     The Defense argues that, because Plaintiff was not federally-employed, there is no protection from federal adverse action under the Rehabilitation Act. This argument is patently frivolous and deserving of sanctions.

22.     29 USC § 794(a) clearly states that no protected citizen shall "be subjected to discrimination under ... any program or activity conducted by any Executive agency." The Court can take judicial notice that the U.S. Marshal Service, for which both Defendants work, and the U.S. Attorney's Office, for which the Defense Counselor works, are "executive agencies." Specifically, they are both part of the U.S. Department of Justice.

23.     The Defense places a great deal of stock in their citation of 29 USC § 794b, but their reliance in that statute is misplaced. That statute only determines what *remedies* are available after liability has been determined, not the criteria for liability in the first instance.

### Sub-Section 7: A right of action does indeed exist against federal officials, and sovereign immunity has been waived in this case.

24.     The Defendants' reliance on the precedent of *Lane v. Pena*, 518 US 187 (1996) is similarly misplaced. First of all, that case was about whether Congress had waived the Federal Government's immunity from suit for *monetary damages*, not whether a cause of action lies against federal agencies *at all*.

25.     Second, the Court and Defense must understand that the Rehabilitation Act does nto proscribe just one type of conduct, and it does not apply to only one class of

people/organizations; rather, the Rehabilitation Act was a broad and comprehensive bill aimed at improving the daily life of disabled people, generally, and as such, it encompasses many types of activities and many classes of people and organizations. Upon reviewing the case of Lane v. Pena, it becomes evident that the Supreme Court believed Congress had waived the Federal Government's sovereign immunity for SOME portions of the Rehabilitation Act, but not others. The Supreme Court merely declared that the *one specific case* that was before the Court at *that particular point in time* did not fall under one of the portions of the Rehabilitation Act in which Congress waived its immunity.  See *id* at 195 ("The Department of Transportation, whatever its other activities, is not a "Federal provider" of financial assistance *with respect to the Merchant Marine Academy*, which the Department itself administers through the Maritime Administration. At oral argument, Lane's counsel effectively conceded as much").

26.      Indeed, Page 194 makes clear that the Supreme Court feels that the Civil Rights Act of 1991 constituted an unambiguous waiver of federal sovereign immunity for violations of 29 USC § 794(a), which, if you haven't been paying attention, is the statute Plaintiff is proceeding on for this Rehabilitation Act violation.  This waiver applies even to punitive damages.

27.      The Defense's assertion that federal executive agencies, such as themselves, are not covered under the Rehabilitation Act, is patently frivolous.  No person who can read and write at an adult level – let alone have the brainpower needed to be an *attorney* – could possibly conduct even a brief review of 29 USC § 794(a) and think that federal agencies are not covered.  When the Defense states (and this is direct quote from the Defense's own motion) that "A right of action does not lie against federal officials under the Rehabilitation Act,[2]" the Defense is completely, positively incompetent.  Plaintiff is not saying that the Defense is wrong; he is saying that the Defense is out of its mind.

---

2   See Dkt. 47, p. 25, in big, bold, capital, and underlined letters.

## Section 8: Plaintiff's *Pro Se* Status and Alternative Legal Theories

28.     In the astronomical event that the Court decides that federal agencies are not covered by
the Rehabilitation Act (seriously, the statute literally says "any Executive agency or by the
United States Postal Service." How can ANYONE with two brain cells to rub together possibly
think that federal executive agencies are not covered?), Plaintiff respectfully reminds the Court
that he is proceeding *pro se*.  As a result, he has the right to have his Complaints viewed liberally,
and for the court to infer a cause of action out of his factual allegations, even if it's not the same
one as that which Plaintiff mentioned in the Complaint itself.  See *Haines v. Kerner*, 404 US 519,
520 (1972) (holding that a Court should not dismiss *pro se* pleading for failure to state a claim
unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim
which would entitle him to relief").

29.     Plaintiff *plead* the Rehabilitation Act in his Amendment Complaint, but he asks the Court
to also consider recovery on the basis of Section 503 of the Americans with Disabilities Act
(seeing as how precedent between the two statutes are interchangeable), which holds that "No
*person* shall discriminate against any individual because such individual has opposed any act or
practice made unlawful by this chapter or because such individual made a charge, testified,
assisted, or participated in any manner in an investigation, proceeding, or hearing under this
chapter." The key word, here, is "person."  Unlike the first three Titles of the Americans with
Disabilities Act (which government acts by employers, state/local governments, and privately-
owned places of public accommodation, respectively), Section 503 places no qualifications on
who it covers, other than that the alleged retaliator be of the *homo sapien* species.  See 1 USC §
8(a) ("In determining the meaning of any Act of Congress, or of any ruling, regulation, or
interpretation of the various administrative bureaus and agencies of the United States, the words

"person", "human being", "child", and "individual", shall include every infant member of the species homo sapiens who is born alive at any stage of development").

30.     A clear and unambiguous waiver of federal sovereign immunity for suits under the ADA can be found in § 505 of the ADA, which states, in pertinent part, "the United States shall be liable ... the same as a private individual."

31.     Since Agents Devine and Carter clearly fall within the definition of "person" as set forth in Title 1, Section 8(a) of the U.S. Code, they are vicariously liable for the actions of their attorney, done in retaliation for Plaintiff's exercise of his rights under the Rehabilitation Act and ADA. See *Link v. Wabash R. Co.*, 370 US 626, 633-634 (1962)[3].

32.     Plaintiff also asks the Court to consider his Amended Complaint as also making another charge of *First Amendment* Retaliation, not just Rehab or ADA Retaliation.  Since the Defense was issuing an adverse action (and yes, it was, indeed, an adverse action; see the next section for details) because of a *lawsuit* (regardless of whether it was for the Rehabilitation Act, the Americans with Disabilities Act, or the Butthole Act), it is protected by the Petition Clause[4]. Therefore, for the Defense – who are comprised entirely of government agents – to engage in retaliation for that constitutes grounds for yet another Bivens Action against them, independent of any disability law claims.  The Defense could never, in a million years, convince the Court that compensatory damages are not available for an intentional act of retaliation for exercising one's First Amendment rights.

33.     Either way you slice it, Plaintiff is entitled to proceed on the Amended Complaint.

---

[3]   "There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's inexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney."

[4]   See California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition.")

## Section 8: Plaintiff has sufficiently plead adverse action.

34.     Last, but not least, the Defendants assert that their citation of Plaintiff's litigation history is not sufficient to constitute an "adverse action." They offer no *direct* legal citation giving this precedent, stating only that a mere citation of litigation history is not the type of action "would have dissuaded a reasonable [citizen] from making or supporting a charge of discrimination," and then making the argument that the current case fails to meet that standard.

35.     First of all, their citation of *Davis v. Scherer* is moot, as Plaintiff has already demonstrated that Congress, with the Civil Rights Act of 1991, waived federal sovereign immunity for violations of 29 USC § 794(a).

36.     Next, we must ask ourselves ... were the Defense's actions sufficiently adverse that a reasonable person would be discouraged from filing the lawsuits in question?  Plaintiff will refer to that question, for purposes of this Brief, as "the Central Question."

37.     That question, however, cannot be answered unless we know, precisely, what the Defense did. The Defense maintains that they merely *mentioned* Plaintiff's litigation history, without commenting on it. If that is, in fact, the case, then Plaintiff concedes that the answer to the Central Question is "no."

38.     However, Plaintiff maintains that the Defense brought it up for the express purpose of stirring up resentment with the Judge ... to get the judge to think "This guy has filed lawsuits in the past, and I, personally, feel that those lawsuits are stupid. Therefore, I'm going to rule against the plaintiff on every issue, even if the law and evidence is in his favor on this issue, because his lawsuits are just that stupid, so he doesn't DESERVE justice."  In short, Plaintiff asserts that the Defense is attempting to use Plaintiff's prior lawsuits (which have NOTHING to do with the case at hand) to cost Plaintiff the current case.

39.     If Plaintiff's version of events is correct, then the answer to the Central Question is "yes."

40.     In the event that there is any dispute about the material facts, the Court must deny the motion to dismiss for failure to state a claim. See Mylan Laboratories, Inc. v. Matkari, 7 F. 3d 1130, 1134 (4th Cir. 1993) ("In general, a motion to dismiss for failure state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff").

41.     In the instant case, the Defense has provided even MORE evidence of their true motive with their two Renewed Motions to Dismiss.  In the Memorandum in Support thereof, the Defense has gone even more out-of-their-way than the last time to address how much they believe Plaintiff to be an "abusive" and "vexatious" filer.  See Dkt. 47, pp. 3-4.  They are, clearly, trying to stir up judicial resentment.  If their motives were not clearly shown before, they have become such.

42.     Therefore, the Defendants have, undoubtedly, engaged in adverse action against Plaintiff.

## CONCLUSION

43.     To wrap this Response up, let us recap the points:

(a)     Upon Plaintiff providing a FULL copy of the audio-recording phone call, it is now perfectly clear that Plaintiff was being calm and professional, until Agent Devine chose to accuse Plaintiff, without any proof, of personally being responsible for calling the wrong department.  Even then, Plaintiff may have raised his voice a touch, but it still fell far short of anything you could describe as "abusing" Devine.

(b)     Even then, Plaintiff has the right to be as offensive as he wants; numerous U.S.

Supreme Court cases have repeatedly upheld that offensiveness is not a factor in determining whether speech loses its First Amendment protection.

(c)     Even if Plaintiff's undisputed speech is NOT First Amendment-protected, it still has yet to be *made illegal* by an Act of Congress.  As a result, Agent Devine's threat to have Plaintiff arrested is still unconstitutional, if not under the First Amendment, then under the Fifth (specifically, the right to Due Process, a right which encompasses, among other things, the right to not be punished for any conduct, unless it is first made illegal).

(d)     Both of these rights are clearly-established through innumerable legal citations.

(e)     No reasonable person would believe that a threat of arrest would not deter a person of ordinary firmness from exercising their rights.

(f)     Moreover, the distance of 1100 miles is not an object in determining whether the threat of arrest was "realistic" or "imminent," because of the legal process called "extradition."

(g)     Therefore, no reasonable person, in the Defendants' position, would have believed that their threats would not have chilled a person of ordinary firmness into not exercising their rights.

(h)     It is completely ludicrous and deserving of sanctions to say that the Rehabilitation Act, which clearly lists "executive agencies" as being bound by it, does not create a right of action against said executive agencies.

(i)     Even if they are not, because Plaintiff is pro se, he has the right to have his complaint viewed liberally, and for his factual allegations to also allege a cause of action under the Americans with Disabilities Act, and also the U.S. Constitution.

(j)     The Defendants undeniably engaged in an "adverse action" when they drew attention

to Plaintiff's prior litigation history for the express purpose of getting the Court to hate

Plaintiff and rule against Plaintiff out of spite towards Plaintiff filing lawsuit the Judge,

personally, considers to be stupid.

44.     Wherefore, premises considered, Plaintiff respectfully requests that the Motions to

Dismiss be denied in their entirety, sanctions be imposed for their frivolous assertions, costs

incurred be awarded, and any other relief to which he may be entitled.

        So requested on this, the 3rd day of July, 2015.

                                                    David Stebbins
                                                    123 W. Ridge St.,
                                                    APT D
                                                    Harrison, AR 72601
                                                    870-204-6516
                                                    stebbinsd@yahoo.com

### CERTIFICATE OF SERVICE

        I, *pro se* Plaintiff David Stebbins, do hereby certify, under penalty of perjury, that, on the 3rd day of July, 2015, I served the Defense with a copy of the foregoing response by emailing it to the Defense Attorney, Dennis Barghaan, at the email address of Dennis.Barghaan@usdoj.gov.

                                                    David Stebbins
                                                    123 W. Ridge St.,
                                                    APT D
                                                    Harrison, AR 72601
                                                    870-204-6516
                                                    stebbinsd@yahoo.com