UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DAVID A. STEBBINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 1:14cv1267 |
| ) | |
| RONALD CARTER, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Pursuant to Local Rule 7(F)(1), defendants, through their undersigned counsel, hereby respectfully submit the instant reply memorandum in support of their motion to dismiss plaintiff's amended complaint in the above-captioned matter.

## INTRODUCTION

In this action, plaintiff David Stebbins seeks to institute significant monetary liability against two Deputy United States Marshals Joshua Devine and Ronald Carter, in their individual capacities, based on an off-hand and impulsive remark during a telephonic conversation that even plaintiff now concedes was uttered merely out of "frustration." Courts have held that the type of mere rhetoric that is alleged within the four corners of plaintiff's complaint, which does not inculcate a realistic threat of arrest, does not state a claim under the First Amendment. But more importantly, plaintiff has failed to come forward with any authority for the proposition that such a telephonic statement, especially in the particular context that confronted these government officials, ran afoul of the Constitution. Pursuant to binding Supreme Court authority, plaintiff's

1

claims must be dismissed at this threshold stage of the litigation, because the individual capacity defendants are entitled to qualified immunity.

## ARGUMENT

I. **THE ALLEGATIONS WITHIN PLAINTIFF'S AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR CONSTITUTIONAL DEPRIVATION**

It bears repeating at the outset that defendants' instant motion – as required under well-settled Supreme Court doctrine – assumes the veracity of the non-conclusory factual allegations contained within plaintiff's complaint, and therefore, *a fortiori*, there literally can be no factual disputes in the resolution of this motion. See Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009). And this is particularly the case with respect to claims, like those here, that are brought against a government official in his individual capacity, which must be adjudicated at the beginning of litigation *without* discovery if the complaint's allegations standing alone do not state a clearly-established constitutional violation:

> Unless the Plaintiff's allegations state a claim of violation of clearly-established constitutional law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.

Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); see also S.P. v. City of Tacoma Park, 134 F.3d 260, 265 (4th Cir. 1998) ("[W]e conclude that Peller failed to allege facts demonstrating the violation of clearly-established law; therefore, the officers are entitled to qualified immunity.").

And thus, it is significant to revisit the non-conclusory *factual* allegations of plaintiff's complaint:

- During a telephone conversation with plaintiff (who was located in Arkansas), Devine (who was located in Northern Virginia) made an impulsive remark suggesting that he might come to arrest plaintiff if he continued to speak to Devine in a certain fashion. Complaint, (Dkt. No. 1), ¶¶10-13; Am. Opp. (Dkt. No. 51), at 2 ¶8.

- Despite the impulsive remark, plaintiff continued to engage and speak with Devine about the purpose of his call, explaining in particular that he had First Amendment protection. Complaint, ¶16.

- The same day as his conversation with Devine, plaintiff called the Marshals Service again in order to register a complaint about Devine's statement. Carter explained that he would "speak with" Devine about his statement, but that plaintiff had not actually been arrested. Id. ¶¶19-22.

- The complaint does not allege that Devine took any action whatsoever regarding his statement; instead, the complaint openly wonders whether Devine's "threat" of arrest was "serious." Id. ¶40.

The questions before this Court are (a) whether these facts state a claim under the Constitution; and (b) whether any Supreme Court or Fourth Circuit authority, in September 2014, would have provided notice to Devine and Carter that their specific conduct – in this particular context – would violate the Constitution. The answer to both questions is no, although in the interest of judicial economy, defendant will address these questions in *reverse* order.

    A.    AN IMPULSIVE TELEPHONIC REMARK DOES NOT GIVE RISE TO AN INDIVIDUAL-CAPACITY FIRST AMENDMENT CLAIM

**1.a.** As defendants noted in their opening memorandum, in order to deprive the individual capacity defendants of their entitlement to qualified immunity, plaintiff must demonstrate that decisional authority from the Supreme Court or the Fourth Circuit would have provided notice to Devine and Carter that their *specific* actions in this *particular* context violated the Constitution. Mem., at 10-12; 17-19; see also Saucier v. Katz, 533 U.S. 194, 202 (2001) (holding that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). And defendants explained that there was simply no relevant authority holding that making the type of impulsive remark that Devine made during a telephonic conversation constituted unlawful First Amendment retaliation. Am. Mem. (Dkt. No. 47), at 18-19. Both of

3

plaintiff's opposition memoranda (Dkt. Nos. 41; 51) confirm the veracity of this conclusion, as plaintiff does not cite a single decision (let alone one from the Supreme Court or the Fourth Circuit) standing for the proposition that Devine's actions in this unique context violate the First Amendment.

Devine is therefore entitled to qualified immunity. Indeed, the instant action – given plaintiff's response – presents the ideal situation for the exercise of the discretion that the Supreme Court recently vested in this Court to dispatch an individual capacity claim without reaching the question of whether the underlying conduct was constitutionally-invalid, because there simply was no *clearly-established* law prohibiting the government official's actions. See Pearson v. Callahan, 555 U.S. 223, 225 (2009). As the Fourth Circuit recently held with respect to another individual-capacity claim:

> We choose, however, not to reach the question of whether Campbell's conduct amounted to a constitutional violation. Rather, we hold that because Campbell's conduct was not proscribed by clearly established law, summary judgment on the basis of qualified immunity was proper.

Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015). The same holds true here – this Court need not address the underlying constitutional question because there can be little doubt that in the absence of any applicable clearly-established law, Devine is entitled to qualified immunity.

**b.** Nor does plaintiff's claim fare any better were this Court to reach the merits of his constitutional claim. All parties ostensibly agree that only "realistic" threats of "imminent" arrest made in retaliation for protected speech activity, and not mere "rhetoric," violate the First Amendment. Am. Mem., at 12-14 (citing, e.g., Baltimore Sun Co. v. Ehrlich, 437 F.3d 410 (4th Cir. 2006); Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685-86 (4th Cir. 2000); Int'l Ass'n of Machinists & Aerospace Workers v. Haley, 832 F. Supp. 2d 612, 629-30 (D.S.C. 2011), aff'd, 482 Fed. Appx. 759 (4th Cir. 2012)); Opp. (Dkt. No. 41), 9-12. But as defendants explained in

their opening memorandum, the totality of the circumstances alleged in plaintiff's complaint demonstrates only that Devine engaged in "rhetoric," and nothing even approaching a "realistic" threat of "imminent" arrest.

Indeed, plaintiff's *own complaint*, filed mere days after his conversations with Devine and Carter, confirms that even *he* did not believe that Devine was serious in threatening arrest. Complaint, ¶40. And in his own opposition, plaintiff concedes that Devine's statement was simply uttered out of "frustration," Opp., at 2, which is far different than an actual and serious threat of arrest. As defendants explained, Devine's comment – as averred in plaintiff's complaint – was nothing more than mere "rhetoric" for a number of additional reasons: (1) the remark was made impulsively during a telephonic conversation during which the parties were well over 1000 miles apart; (2) plaintiff continued to engage and speak with Devine in the aftermath of the remark, going so far as to provide him a lesson in his First Amendment freedoms; (3) plaintiff called the Marshals Service the same day to complain about Devine's comment, and Carter told him both that Carter would speak with Devine about the conversation and that plaintiff had not actually been arrested; and (4) Devine took no additional action to further any intent to arrest plaintiff. Mem., at 14-17. Plaintiff – in his opposition – concedes (through his silence) that he continued to assert his First Amendment rights despite Devine's rhetorical comment, and that Devine took no further action against him. These concessions alone, combined with the telephonic context out of which Devine's impulsive comment was issued, confirm that Devine – based solely on the allegations in plaintiff's complaint – did not make a "realistic" threat of "imminent" arrest.

Even discounting these concessions, however, plaintiff's actual arguments bring him no closer to stating a claim. On this score, plaintiff first contends that although Carter informed him

5

that he would speak with Devine about the conversation, and more importantly, that plaintiff had not been arrested, plaintiff's own personal experiences with government agents led him to distrust Carter's ostensible attempt to reassure him that he was not in any real danger. Opp., at 2-3 ¶¶6-7; 9 ("Whereas the Defense argues that any reasonable person would, upon hearing Agent Carter's promise to 'talk to" Agent Devine as an assurance that he would not be arrested, in light of Plaintiff's life experiences, he received the exact opposite message."). But this has the pertinent standard exactly *backwards* – whether a particular government action is sufficiently adverse to violate the First Amendment is governed by an *objective* standard:

> Government action [is] sufficiently chilling when it is "likely [to] deter a person of *ordinary firmness* from the exercise of First Amendment rights."

Benham v. City of Charlotte, 635 F.3d 129, 135 (4th Cir. 2011) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (emphasis added)); see also Blankenship v. Manchin, 471 F.3d 523, 530 (4th Cir. 2006). As a result, the fact that plaintiff *himself* may have taken Carter's words of reassurance differently does not assist him in stating a First Amendment claim. And in any event, the actual allegations contained within plaintiff's complaint, which aver plaintiff's own actions in the wake of Devine's comment, attest to the *de minimis* nature of the impact that Devine's comment allegedly had.[1]

---

[1] Plaintiff's conduct – as he himself clearly alleged in his complaint – completely belies this newfound statement of a concerned reaction to Devine and Carter's statements. In particular, plaintiff's complaint alleges that after Devine made his statement, far from cowering in fear, he both continued on with the conversation (providing Devine a constitutional lesson in the process), and then called the Marshals Service to *complain* about the statement. These are hardly the actions of an individual chilled in the exercise of his First Amendment freedoms. Of course, for the reasons stated in the text above, plaintiff's own personal (non)-reaction to Devine's impulsive comment is not dispositive. But as the Fourth Circuit has held, such actions support the conclusion that Devine's comment would have been adverse to a reasonable person. See Constantine, 411 F.3d at 500 (holding that "the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity"); see also Baltimore Sun, 437 F.3d at 419 ("Nitkin's and Olesker's actual response

Plaintiff also disputes the notion that the geographical distance between he and Devine impacted the "realistic" or "imminent" nature of Devine's putative arrest "threat." Opp., at 9-12. In this regard, plaintiff first maintains that Devine did not know where he lived at the time of their conversation. Id. at 9-10. But this fact, if anything, actually supports the conclusion that Devine's putative threat was neither "realistic" nor "imminent"; put simply, it is extremely difficult actually to effectuate someone's arrest without knowing where they live. And although plaintiff provides a lengthy discussion on how Devine *could* go about arresting plaintiff (including an explanation of extradition proceedings), id. at 10-11, this simply misses the point. What is relevant is not whether such an arrest was, in some way, *possible*. Rather, in short, the fact that Devine's comment was made impulsively, and during a purely telephonic conversation with the parties over 1000 miles apart, simply renders it (especially in combination with the other contextual realities about this conversation) far less serious or "realistic" – as plaintiff's own complaint recognizes, Complaint, ¶10 – and certainly not "imminent." See Haley, 832 F. Supp. 2d at 630.

As such, Devine's impulsive comment did not run afoul of the First Amendment, and he is entitled to the entry of summary judgment.

2.      Ostensibly recognizing that Carter did not utter the comment that serves as the basis of plaintiff's First Amendment claim, plaintiff attempts to attach liability to Carter based on a "tacit authorization" theory; *i.e.*, that by not agreeing to issue discipline to Devine, Carter tacitly "authorized" Devine's behavior. Complaint, ¶¶2, 22-23. In their opening memorandum, defendants explained how plaintiff had the "tacit authorization" theory exactly backwards – in order for liability to attach under this theory, a supervisory government official must have

---

attests to the *de minimis* impact that the Governor's directive would have on reports of ordinary firmness.").

sufficient knowledge that a subordinate will violate the Constitution *before* that putative violation occurs. Mem., at 19-21 (quoting Danser v. Stansberry, 772 F.3d 340, 349 (4th Cir. 2014). Plaintiff provides no comprehensive opposition to this reasoning,[2] or the Fourth Circuit's decision in Danser.

This Court should therefore dismiss plaintiff's First Amendment claim against Carter. At the very least, given the lack of any authority even suggesting that Carter's after-the-fact attempt to reassure plaintiff ran afoul of the Constitution, Carter is most assuredly entitled to qualified immunity.

### B. PLAINTIFF'S NEW "DUE PROCESS" CLAIM IS MERITLESS

Plaintiff also attempts to insert a "due process" claim into this action against Devine and Carter in their individual capacities. Opp., at 5 ¶¶18-19. The upshot of this theory is that Devine's impulsive telephonic remark violated plaintiff's Fifth Amendment due process rights because it served as "punishment" for conduct in which plaintiff engaged that was not "unlawful." This claim, which plaintiff now concedes was only (at best) cryptically pled in his original complaint, id., is similarly meritless. At the very least, because plaintiff can cite to no relevant authority accepting his due process theory – let alone in these particularized circumstances, Devine and Carter are entitled to qualified immunity.

The Due Process Clause has two components – substantive and procedural. See, e.g., Stratton v. Mecklenburg County Dep't of Soc. Servs., 521 Fed. Appx. 278, 294 (4th Cir. 2013), cert. denied, 134 S. Ct. 1290 (2014). And although plaintiff does not identify with any particularity which of these components forms the basis of his claim, the use of "punishment"

---

[2] In fact, plaintiff *concedes* that the tacit authorization theory requires knowledge of putatively-unconstitutional behavior *before* it occurs, and a failure to prevent the unconstitutional behavior from occurring. Opp., at 11-12. Carter did not learn of Devine's remark until it had already occurred, and if anything, attempted to reassure plaintiff that he had not been arrested.

appears to suggest that his claim is one of *substantive* due process. It is hard to overstate the high burden that plaintiff bears to state a substantive due process claim. As the Supreme Court has held, one runs afoul of substantive due process only by engaging in "the most egregious official conduct" – *i.e.*, that which "'shocks the conscience' and violates 'the decencies of civilized conduct.'" County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (quoting Rochin v. California, 342 U.S. 165, 172-73 (1952)); see also id. at 846 (explaining that the conduct in question must be "so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency" (quoting Briethaupt v. Abram, 352 U.S. 432, 435 (1957))).[3]

Against this standard, plaintiff's claim falls well short of the mark. Put simply, an impulsive remark during a telephonic conversation does not come close to the type of "conscience shocking" or "brutal" behavior that is the gravamen of substantive due process. Indeed, an alleged impulsive threat of arrest does not even constitute "punishment" under Supreme Court authority; as the Court held in plaintiff's own cited decision, United States v. Goodwin, 457 U.S. 368 (1982), it is a criminal sanction such as a sentence of incarceration that qualifies as "punishment" for purposes of the Due Process Clause. See id. at 372 ("The imposition of punishment is the very *purpose* of all criminal proceedings." (emphasis added)). Plaintiff simply does not identify any property or liberty interest of which he has been deprived. See, e.g., Tigrett v. Rectors & Visitors of the Univ. of Virginia, 290 F.3d 620, 628 (4th Cir. 2002). At bottom, as one court has noted, an oral threat of arrest does not give rise to a due process claim:

---

[3] And moreover, the Supreme Court has held that in those situations, as here, where a particular amendment provides the governing standard for a particular governmental action, a litigant cannot resort to the vagaries of substantive due process. See, e.g., Graham v. Connor, 490 U.S. 386, 395 (1989).

> [M]ere oral threats to arrest and use force to enforce a court order without the alleged use or even show of *any* force, do not cross the line from tortious misconduct to a violation of substantive due process.

Renneke v. Florence County, 594 Fed. Appx. 878, 880-81 (7th Cir. 2014) (emphasis in original). This Court should therefore dismiss plaintiff's new due process claim.

But even were this Court somehow to find merit in plaintiff's due process theory, there can be little doubt that it would be treading new jurisprudential ground. Indeed, plaintiff's opposition memorandum does not cite any authority – let alone Supreme Court or Fourth Circuit authority – even suggesting that Devine and/or Carter should have known that an impulsive telephonic remark such as the one averred within plaintiff's complaint would run afoul of substantive due process principles. And for this reason alone, Devine and Carter would be entitled to qualified immunity on such a due process claim.

## II. PLAINTIFF'S FTCA CLAIM AGAINST THE UNITED STATES MUST BE DISMISSED

Plaintiff's original complaint also included causes of action against Devine and Carter for so-called "terroristic threatening" under the common law of Virginia. Complaint, ¶¶2-3. After the United States Attorney certified that Devine and Carter were acting within the scope of their employment, the United States was substituted as party defendant on these claims as a matter of law pursuant to 28 U.S.C. § 2679, and the United States moved to dismiss the resulting Federal Tort Claims Act ("FTCA") claim because plaintiff failed to present an administrative claim to the Marshals Service, and Virginia common law did not recognize a tort cause of action for "terroristic threatening." Amd. Mem., at 21-24.

Plaintiff concedes that he failed to present an administrative claim to the Marshals Service prior to instituting this civil action, and is completely silent about the limits of Virginia common law. Rather, plaintiff advances two arguments: (1) he brought this action only

10

pursuant to the implied remedy the Supreme Court authorized in Bivens, and thus the FTCA is irrelevant, Opp., at 3 ¶10; and (2) because the United States has voluntarily substituted itself into this action, it has waived any objection to this Court's subject matter jurisdiction, id. at 12-13. Neither argument has any merit. Not only is the remedy authorized by Bivens limited only to *constitutional* claims (and not those finding their basis in state common law), see Strange v. O'Brien, 2010 WL 8750304, at *7 (W.D. Va. July 30, 2010),[4] but the statutory process by which the United States is properly substituted for common law claims brought against federal employees is well-established, see Brown v. United States, 933 F. Supp. 2d 780, 782-83 & n.5 (E.D. Va. 2013). And it is well-established that a party cannot waive challenges to a court's subject-matter jurisdiction. See, e.g., Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003).[5]

Accordingly, this Court should dismiss plaintiff's currently pending FTCA claims for a lack of subject-matter jurisdiction.

### III. PLAINTIFF'S REHABILITATION ACT CLAIM REMAINS FRIVOLOUS

Plaintiff continues to argue – despite the citation of direct Supreme Court authority to the contrary – that he may maintain a Rehabilitation Act claim against federal officials based on the mere fact that undersigned counsel cited to one of plaintiff's prior Rehabilitation Act actions in describing the genesis of *this action*. Nowhere within the four corners of plaintiff's opposition

---

[4] As before, defendants have attached all opinions cited in this memorandum that can only be located through online databases as Exhibit C.

[5] Plaintiff is ostensibly confusing subject-matter jurisdiction with *personal* jurisdiction, the latter of which *is* waived if a party voluntarily makes a general appearance in a civil action. See, e.g., Gerber v. Riordan, 649 F.3d 514, 520 (6th Cir. 2011).

memorandum, especially once stripped of sarcastic remarks, has plaintiff identified any decisional authority supporting such a claim; as such, this Court should dismiss the same.

a. In its opening memorandum, citing the Supreme Court's decision in Lane v. Pena, 518 U.S. 187 (1996), defendants explained that notwithstanding its substantive provisions, the Rehabilitation Act did not create a federal cause of action to remedy violations of the statute that might have occurred outside of the employment context. Amd. Mem., at 25-26. Plaintiff's only response is to point to 29 U.S.C. § 794(a), which provides that "Executive agencies" are bound by the statute's substantive prohibitions. Amd. Opp. (Dkt. No. 51), at 6 ¶¶21-23. But in so arguing, plaintiff confuses the significant difference between the *violation* of a statute, on the one hand, and the existence of a private right of action in this Court to *remedy* such a violation, on the other. As one court has cogently noted:

> In construing section 5309, we ask "whether Congress intended to create the private right of action asserted" by Freeman. We recognize that just because "a federal statute has been violated does not automatically give rise to a private cause of action in favor of that person."

Freeman v. Fahey, 374 F.3d 663, 665 (8th Cir. 2004) (quoting Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979)). It is for this reason – along with its analysis of the plain statutory language of the Rehabilitation Act – that the Supreme Court in Lane held that a private right of action did not lie against a federal agency or official outside the employment context. See Lane, 518 U.S. at 193-94. And numerous federal courts have held identically. See, e.g., Moore v. Cooksey, 242 F.3d 389 (10th Cir. 2000); Sarvis v. United States, 234 F.3d 1262 (2d Cir. 2000); Farmer v. Federal Bureau of Prisons, 2015 WL 1439871, at *6 (E.D.N.Y. Mar, 27, 2015); Roark v. Flanery, 2014 WL 4447451, at *27 (E.D. Tex. Sept. 9, 2014).

Accordingly, regardless of whether plaintiff has properly alleged a violation of the Rehabilitation Act, because the statute does not create a private cause of action in this Court to remedy any such violation, this Court must dismiss.[6]

b.  In its opening memorandum, defendants also noted that there simply could be no argument that the mere citation – in legal papers filed with this Court – of a prior civil action brought by a plaintiff was a sufficient "adverse action" to give rise to Rehabilitation Act liability. Amd. Mem., at 27-28.  Plaintiff does not present any authority for a contrary conclusion. Amd. Opp., at 10 ¶¶34-38.[7]  As such, this serves as an alternative ground on which his Rehabilitation Act claim should be dismissed.[8]

## CONCLUSION

For the foregoing reasons, this Court should dismiss plaintiff's amended complaint.

///

///

---

[6] Importantly, plaintiff similarly offers no authority for the proposition that he can bring any Rehabilitation Act claim against federal officials sued in their individual capacities.

[7] Instead, plaintiff maintains that the citation of the prior civil action may have been done with an improper purpose.  But as this Court is well aware, even in the employment context, an employer's "intent" is irrelevant to whether the particular action at issue was sufficiently "adverse" as to give rise to liability.  See, e.g., Cappell v. Dep't of Army, 2014 WL 5782389, at *10 (D. Kan. Nov. 06, 2014) ("Whatever Reese's intent behind the statement was is irrelevant because plaintiff fails to show that Reese's statement, or any alleged consequence of that statement, resulted in an adverse employment action.").

[8] Plaintiff also asks this Court to construe his claim under the Americans with Disabilities Act ("ADA").  But it is similarly well-settled that "[t]he ADA does not apply to federal agencies." Moore v. Potter, 605 F. Supp. 2d 731, 734 (E.D. Va. 2009).

        Respectfully submitted,

        DANA J. BOENTE
        UNITED STATES ATTORNEY

By:          /s/
        DENNIS C. BARGHAAN, JR.
        Assistant U.S. Attorney
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Telephone: (703) 299-3891
        Fax:        (703) 299-3983
        Email: dennis.barghaan@usdoj.gov

DATE: July 17, 2015        ATTORNEYS FOR DEFENDANTS

OF COUNSEL:    Ed Bordley
                  United States Marshals Service

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and will transmit a true and correct copy of the foregoing to the following non-user via first-class mail:

David Stebbins
123 W. Ridge Street, Apt. D
Harrison, Arkansas 72601

Date: July 17, 2015                        /s/
                                          DENNIS C. BARGHAAN, JR.
                                          Assistant U.S. Attorney
                                          2100 Jamieson Avenue
                                          Alexandria, Virginia 22314
                                          Telephone: (703) 299-3891
                                          Fax:        (703) 299-3983
                                          Email: dennis.barghaan@usdoj.gov

                                          ATTORNEYS FOR DEFENDANTS